## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
================================
                                :
AUCTUS FUND, LLC,               :
                                :
        Plaintiff,              :
                                :
        v.                      :        Civil Action No. _____
                                :
FTE NETWORKS, INC.,             :
                                :
        Defendant.              :
                                :
================================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.      The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, FTE Networks, Inc., (hereinafter the "Company" or "FTNW"), in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for damages, punitive damages, costs and attorney's fees, and injunctive and equitable relief arising from, and resulting from the Defendant's violations of the following:

a)      Section 12(2) of the Securities Act of 1933, *as amended* (hereinafter the "Securities Act" or the "1933 Act"), 15 U.S.C. §§77l(2), and Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act" or the "1934 Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

b)      Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

    c)      breach of contract;

    d)      breach of implied covenant of good faith and fair dealing;

    e)      unjust enrichment;

    f)      breach of fiduciary duty;

    g)      fraud and deceit;

    h)      negligent misrepresentation; and/or

    i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendant's violations of the securities laws (federal and state), and its breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that judgment be entered on all Counts against the Defendant and that Auctus be awarded its compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC is a duly organized Delaware limited liability company with its principal place of business located at 545 Boylston Street, Suite 200, Boston, Massachusetts 02116.

2

5.     Upon information and belief, the Defendant, FTE Networks, Inc., is a corporation, duly organized in the State of Nevada, and with its principal place of business located at 237 West 35th Street, New York, NY 10001.

## III. JURISDICTION AND VENUE

6.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

7.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Parties agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is such District where the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

8.     This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Agreement, and as arising from its extensive business contacts, generally over time and specifically in its business dealings with the Plaintiff, within the Commonwealth of Massachusetts.

## IV. FACTUAL BACKGROUND

### A.     The Auctus / FTNW Transaction Documents and Contracts

9.     On or about June 27, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "First Purchase Agreement" or the "First SPA") and a certain Convertible Promissory Note, for a total of Five Hundred – Twenty - Five Thousand and 00/100 (**$525,000.00**) Dollars (U.S.) (hereinafter the "First Note," and, with the "First SPA," hereinafter

as the "First Transaction Documents"), thereby entering into a contract with the Fund for its investment in FTNW. *See* First Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit A**; First Note, attached, restated and incorporated by reference herein as **Exhibit B**. Following this investment and upon various dates, the Fund successfully converted the Defendant's obligations into publicly traded shares of FTNW common stock, and, as of date hereof, had fully recouped its FTNW investment on the First SPA and the First Note.

10.     On or about September 27, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement" or the "Second SPA") (collectively hereinafter, with the First Purchase Agreement, the "Purchase Agreements" or the "SPA's") and a certain Convertible Promissory Note for a total of Five Hundred – Twenty - Five Thousand and 00/100 (**$525,000.00**) (U.S.) (hereinafter the "Second Note" and, with the Second SPA, hereinafter as the "Second Transaction Documents")(collectively hereinafter, with the First Note, the "Notes") (collectively, First Transaction Documents, with the Second Transaction Documents, hereinafter as the "Transaction Documents"), thereby entering into a contract with the Fund for its further investment in FTNW. *See* Second Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit C**; Second Note, attached, restated and incorporated by reference herein as **Exhibit D**.

11.     Thus, in detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff. Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund regarding its business, operations and finances, perpetrated securities fraud in connection

with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the

Exchange Act, and Rule 10b-5, as promulgated thereunder.

### B.     Defendant's Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities

12.     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and

failed to provide material facts to Auctus in connection with its investments and in the offer,

purchase and sale of securities, and especially with respect to the operations, business, finances

and other matters of Defendant FTNW.

13.     As an example of the material misrepresentations, omissions and false information

provided to the Plaintiff, on or about March 9th, 2017, the Defendant published and disseminated

certain statements, entitled "*FTE Networks and Benchmarks Builders to Join Forces,*" which

provided, in pertinent part, as follows:

> **"FTE Networks, Inc. (OTCQX:FTNW) ("FTE" or the "Company")**, a leading network infrastructure solutions provider in the technology and communications industries, today announced a definitive agreement to join forces with privately held Benchmark Builders, Inc. ("Benchmark"), a leading provider of construction management services based in New York.
>
> The transaction will enable FTE to deliver integrated network services, cutting-edge technology, and construction management services on the largest and most complex projects, from conception to completion. Benchmark is a premier construction management services firm and general contractor, with a powerful industry brand and strong presence in the New York City metropolitan market.
>
> Benchmark offers FTE an established platform to aggressively roll-out FTE's "compute to the edge" installations in New York City and the surrounding region. This ground-breaking technology allows building owners to provide the best broadband access at significant savings to both landlords and tenants, while creating revenue generating opportunities for landlords.
>
> Benchmark President Fred Sacramone will continue as President and become a member of the FTE Networks Board. Senior management of Benchmark will remain the same, and the acquisition will provide new opportunities to the employees of both businesses.

"We believe that this transaction offers tremendous benefits to our clients, stockholders, and employees – and significantly accelerates our strategy of developing an integrated technology and construction management offering," said Michael Palleschi, FTE's President and Chief Executive Officer. "We can now serve our clients as a one-stop shop, providing the highest quality design, construction, operation, and maintenance of network infrastructure while providing cutting-edge technology and meeting the growing customer demand for turnkey infrastructure solutions."

Sacramone added: "Joining FTE is the logical next step in the continued growth and success of Benchmark, allowing us to expand our reach nationally and seize new opportunities. We have long-standing relationships with FTE senior executives and look forward to becoming the cornerstone of FTE's construction management practice. We are excited about the tremendous possibilities ahead."

FTE will finance the $75 million transaction with cash, FTE common stock, and new financing. The alliance is expected to close in the second quarter of 2017.

The combination will provide significant economies of scale, synergies, complementary business activities, and new growth opportunities in strategic locations across the U.S. Benchmark helps FTE significantly expand its portfolio of sector expertise and enables the Company to accelerate its penetration of the fast-growing market for data center construction.

Significantly, the addition of Benchmark's customer base and project pipeline to FTE's project management and technical capabilities propel FTE to the forefront of the network infrastructure, technology, and interior construction markets. The acquisition will immediately add Benchmark's three-year $300 million in project backlog to FTE's three-year $170 million project backlog."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

14.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about March 17th, 2017, the Defendant published and disseminated  certain statements, entitled "*FTE Networks Receives Additional Purchase Order Towards a Projected $10 Million Project; Expands Presence in New York City,*" which provided, in pertinent part, as follows:

"NAPLES, FL--(Marketwired - March 14, 2017) - FTE Networks, Inc. (OTCQX: FTNW) ("FTE" or the "Company"), a leading network infrastructure solutions provider in the technology and communications industries, today announced that it has received an

additional purchase order towards a project with a leading Northeast broadband communications company and it has expanded its New York City presence by opening new offices.

The developments come after FTE's announcement last week that it has signed a definitive agreement to join forces with privately held Benchmark Builders, Inc., a leading provider of construction management services in New York.

FTE also received another in a series of expected purchase orders that are part of Midtown Manhattan project that could have a value of $10 million over 12 months. "The addition of these projects continues to support the company's strategic focus of growing its inside plant (ISP) line of business and maintaining or improving its gross margins of 41% and driving profitability," said FTE Chairman and CEO Michael Palleschi. FTE will be taking new offices in New York at 237 West 35th Street, Suite 801, to expand the company's presence in the area to handle the additional business and anticipated growth.
The Benchmark transaction will enable FTE to deliver integrated network services, cutting-edge technology, and construction management services on the largest and most complex projects, from conception to completion. Benchmark has a powerful industry brand and strong presence in the New York City metropolitan market.

"New York City is a great opportunity for FTE Networks, as we continue to execute toward our $170 million backlog over the next three years," Palleschi added. "The pending transaction with Benchmark, combined with the FTE anticipated hyper-growth, enables us to continue to build our powerful presence in New York. Developers, network operators, and other businesses in New York seek out FTE for its high-quality work and customer service."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or

misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

15.     As a further example of the material misrepresentations, omissions and false

information provided to the Plaintiff, on or about June 5th, 2017, the Defendant published and

disseminated certain statements, entitled "*FTE Networks Announces New Contracts Valued at*

*Aggregate $85MM,"* which provided, in pertinent part, as follows:

"NAPLES, FL--(Marketwired - June 05, 2017) - FTE Networks, Inc. (OTCQX: FTNW) ("FTE" or "the company"), a leading network infrastructure solutions provider in the technology and communications industries, today announced that Benchmark Builders, Inc. (Benchmark), a wholly owned subsidiary of FTE, has won five new infrastructure projects from three different customers that are valued at approximately $85 million in the aggregate.

Previously announced, Benchmark was recently ranked No. 6 among the top general contractors for alteration and renovation projects based on initial estimated costs listed in New York City Department of Building permits filed between January 2012 and March 2017. To see the complete rankings in the May issue of *The Real Deal*, considered the leading source of New York real estate news, please click here.

The projects are each located in midtown Manhattan. Work has already begun and all of the projects are expected to be completed throughout 2017. In total, the new assignments represent approximately 450,000 square feet of build outs. The new contracts support the combined nine-month backlog of $261MM that FTE and Benchmark had as of April 20, 2017.

"Since completing the acquisition of privately-held Benchmark in April of this year, we have already seen a flurry of activity and new contract wins that strengthen our backlog and strong position within the New York City market," said Michael Palleschi, President and CEO of FTE Networks."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or

misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

16.     As a further example of the material misrepresentations, omissions and false

information provided to the Plaintiff, on or about June 21st, 2017, the Defendant published and

disseminated certain statements, entitled "*FTE Networks Executes Three Master Service*

*Agreements With Multibillion Dollar Corporations,"* which provided, in pertinent part, as follows:

"NAPLES, FL--(Marketwired - June 05, 2017) - FTE Networks, Inc. (OTCQX: FTNW) ("FTE" or "the company"), a leading network infrastructure solutions provider in the technology and communications industries, today announced that Benchmark Builders, Inc. (Benchmark), a wholly owned subsidiary of FTE, has won five new infrastructure projects from three different customers that are valued at approximately $85 million in the aggregate.

Previously announced, Benchmark was recently ranked No. 6 among the top general contractors for alteration and renovation projects based on initial estimated costs listed in New York City Department of Building permits filed between January 2012 and March 2017. To see the complete rankings in the May issue of *The Real Deal*, considered the leading source of New York real estate news, please click here.

The projects are each located in midtown Manhattan. Work has already begun and all of the projects are expected to be completed throughout 2017. In total, the new assignments represent approximately 450,000 square feet of build outs. The new contracts support the

combined nine-month backlog of $261MM that FTE and Benchmark had as of April 20, 2017.

"Since completing the acquisition of privately-held Benchmark in April of this year, we have already seen a flurry of activity and new contract wins that strengthen our backlog and strong position within the New York City market," said Michael Palleschi, President and CEO of FTE Networks."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

17.    As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about September 5th, 2017, the Defendant published and disseminated certain statements, entitled "*FTE Networks Announces Three New Contracts Valued at $61.6MM,*" which provided, in pertinent part, as follows:

"NAPLES, FL--(Marketwired - September 05, 2017) - FTE Networks, Inc. (OTCQX: FTNW) ("FTE" or the "Company"), a leading provider of innovative technology-oriented solutions for smart platforms, network infrastructure and buildings, today announced that Benchmark Builders, Inc. ("Benchmark"), a wholly owned subsidiary of FTE, has won three new projects that include infrastructure and technology expansion valued at approximately a combined $61.6 million, as it continues to expand its reach in the New York City market. In total, the three projects represent approximately 370,000 square feet of build-outs. All three projects are located in New York City and are expected to be completed in 2017.

Benchmark was recently ranked No. 6 among the top general contractors for alteration and renovation projects. This ranking was based on initial estimated costs listed in New York City Department of Building permits filed between January 2012 and March 2017. The ranking appears in the May issue of *The Real Deal*, which is considered the leading source of New York real estate news.

FTE is leveraging Benchmark's position in the New York City market to maintain its strong growth momentum and realize synergies between the companies. The combined FTE/Benchmark enterprise is a leading provider of corporate interior build-out solutions. The three new contracts add roughly $61.6MM to the combined backlog of $346.7MM that FTE and Benchmark had as of June 30, 2017."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

18.     As a further example of the material misrepresentations, omissions and false

information provided to the Plaintiff, on or about October 31, 2017 the Defendant published and

disseminated certain statements, entitled "*FTE Networks Files Provisional Patent Application for*

*CrossLayer™ Technology Covering Decentralized Internet and Cloud Services,"* which provided,

in pertinent part, as follows:

> "NAPLES, FL--(Marketwired - October 31, 2017) - FTE Networks, Inc. (OTCQX:
> FTNW) ("FTE" or the "Company"), a leading provider of innovative technology-oriented
> solutions for smart platforms, network infrastructure and buildings, today announced that
> it has filed a provisional patent application with the United States Patent and Trademark
> Office (USPTO) for CrossLayer™ technology covering the decentralized provision of
> internet and cloud services.
>
> Networks are composed of OEM devices that bundle hardware and software together at
> centralized sites. Networks generally then use extensions to provide services to end users.
> CrossLayer™ technology enables software and hardware ecosystems to be deployed on-
> site at the building, which can deliver converged carrier-grade network and cloud
> services to building tenants. CrossLayer™ capability regarding edge deployment and
> convergence of cloud and network access is designed to reduce network latency, increase
> bandwidth to content and cloud services, and provide levels of security that customers
> cannot obtain with other network architectures. Its unique architecture enables
> CrossLayer™ to deliver managed high-speed networks to individual buildings and large-
> scale commercial projects.
>
> "We are pleased to announce the filing of this provisional patent application as it further
> supports our company's growth strategy," said Mr. Michael Palleschi, President and CEO
> of FTE Networks."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or

misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

19.     As a further example of the material misrepresentations, omissions and false

information provided to the Plaintiff, on or about October 31, 2017, the Defendant published and

disseminated certain statements, entitled "*FTE Networks Announces New Contracts, Valued at*

*$61MM, in the New York Metropolitan Market,"* which provided, in pertinent part, as follows:

> "NAPLES, FL--(Marketwired - November 02, 2017) - FTE Networks, Inc. (OTCQX:
> FTNW) ("FTE" or the "Company"), a leading provider of innovative, technology-

oriented solutions for smart platforms, network infrastructure and buildings, today announced that Benchmark Builders, Inc. ("Benchmark"), a wholly owned subsidiary of FTE, has secured approximately $61.0 million in new contract awards. The projects are located in New York City and the surrounding boroughs and are expected to be completed throughout the next 18 months.

In the aggregate, the projects represent approximately 372,000 square feet of interior and infrastructure build-outs. The new business reflects a combination of new projects for existing customers and contract awards from new clients. FTE continues to maintain and strengthen its backlog through its new business development and sales initiatives.

### *Highlights of Benchmark's Recent Contract Wins*

- Benchmark continues to expand its reach in the New York City market
- The eight new interior construction projects are valued up to $61.0 million combined
- In total, the projects represent approximately 372,000 square feet of build-outs combined
- All eight projects are located in New York City and its surrounding boroughs
- The projects are expected to be completed throughout the next 18 months
- Projects comprised of both new and existing customers"

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

20.     As a further example of the material misrepresentations, omissions and false information provided to the Plaintiff, on or about November 16, 2017, the Defendant published and disseminated certain statements, entitled "*FTE Networks Reports Record Quarterly Revenue of $79.1MM as Company's Momentum Continues,*" which provided, in pertinent part, as follows:

"NAPLES, Fla., Nov. 16, 2017 (GLOBE NEWSWIRE) -- FTE Networks, Inc. (OTCQX:FTNW) and (OTCQX:FTNWD) ("FTE" or the "Company"), a leading provider of innovative technology-oriented solutions for smart platforms, network infrastructure and buildings, today announced unaudited financial results for the three months and nine months ended September 30, 2017. The Company achieved significant revenue, margin, and profitability increases both on a quarter-over-quarter and year-over-year basis. The Company reported revenues of $79.1MM, Gross Margin of 19.6%, Net Income of $2.5MM, Adjusted EBITDA of $11.6MM and $1.61 adjusted diluted earnings per share for the three months ended September 30, 2017.

Michael Palleschi, the Company's President and CEO, commented, "We are very pleased about our third quarter results as almost every measure of performance improved over the

second quarter. The Company experienced momentous 56% revenue growth over the previous quarter and profitability of $2.5MM, both contributing to an adjusted diluted earnings per share of $1.61."

Mr. Palleschi continued, "The Company continues to make significant strides in its integration of Benchmark Builders, launch of CrossLayer™ and strengthening of FTE Network Services. Our sales teams are now fully engaged in selling activities and focused on implementing measures that cross-promote our three business operations. We continue to gain positive and accretive traction with each business entity. The Company's strengthening of its financial position is partly attributable to: CrossLayer™'s recurring revenue model, Benchmark's roughly 90 percent reoccurring revenue, and FTE Network Services' long-term contracts. We are excited with the direct result of these initiatives as the Company's holds an impressive backlog of $419.3MM as of September 30, 2017."

Mr. Palleschi continued, "Management continues to focus on operational efficiencies and has implemented significant cost reductions throughout third quarter 2017. These savings combined with the ability to leverage synergies and streamline the business are expected to yield total cost savings of approximately $3MM annually. Further, the Company continues to invest in CrossLayer™ with a total investment of approximately $4MM to date. Management believes CrossLayer™ provides a technology platform that sets FTE apart from its competitors and provides its customers with a one-stop solution that offers technology, general contracting and network infrastructure solutions."

Mr. Palleschi concluded, "I am extremely excited with the tremendous progress of FTE's continued forward growth trajectory as illustrated in our record revenues and profitability. The Company believes it is well-positioned to move forward with its growth strategy for 2018."

Upon information and belief, the Defendant's statements were incomplete, misleading, and/or misrepresentative or omitted material information with a duty to disclose the same to the Plaintiff.

21.     Upon information and belief, Defendant FTNW made misrepresentations regarding the supposed progress as to its business, operations and finances as to the Company, prior to and in connection with the offer, purchase and sale of securities with the Plaintiff, and as it was contemplating making investments of hundreds of thousands of dollars in the Company.

22.     As a direct and proximate cause of the violations of the federal securities laws of the Defendant, Auctus has suffered irreparable harm, and general, special, and consequential

damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### C. Defendant's Events of Default and Breaches of SPA's and Notes

23. Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Second Note. In addition, pursuant to Section 3.10, an Event of Default shall have occurred by the failure of the Company to properly allocate and/or reserve shares of common stock for the Fund upon its election of conversion, in whole or in part, and its failure to pay the principal and/or interest, when due under the terms of the Note. *See* Second Note (**Exhibit D**), § 3.10. Such Events of Default, together with others, have occurred and continue to occur.

24. Upon the occurrence of an Event of Default under Section 3.1 of the Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3.10 of such Note, the Company is required to pay, and shall pay, the Fund the "Default Sum" (as defined therein), due under the Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of August 9, 2019, the Company owes the Fund, under the Second SPA and the Second Note, the Default Sum totaling One Million-Six Hundred – Ninety – Eight Thousand – Four Hundred – Fifteen and 80/100 (**$1,698,415.80**) Dollars (U.S.). *See* **Exhibit 1**, as attached, restated and incorporated by reference herein. Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

25. In sum, the Defendant perpetrated a fraud upon the Plaintiff, which suffered as a consequence. The Defendant has been unjustly enriched and converted the Plaintiff's assets, causing it to suffer further damages.  As a result of the fraudulent scheme, concealment, and omissions of the Defendant, the Plaintiff lost substantial monies and lost opportunity in such assets.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

26.     The Plaintiff reasserts Paragraphs 1 through 25 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

27.     The Defendant violated Section 12(2) of the Securities Act, 15 U.S.C §77l(2), in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

> a)      employed manipulative and deceptive devices and contrivances;
>
> b)      employed devices, schemes and artifices to defraud;
>
> c)      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and
>
> d)      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

28.     As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### <u>COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS</u>

29.     The Plaintiff reasserts Paragraphs 1 through 28 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

30.     The Defendant violated Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

31.      The Defendant recklessly and intentionally omitted disclosure of pertinent material facts in an attempt to make its previous statements appear to not be misleading.

32.     As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACH OF CONTRACT

33.     The Plaintiff reasserts Paragraphs 1 through 32 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

34.     Pursuant to the Second SPA and the Second Note, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.  The Fund contends that the Defendant breached the contract with the Plaintiff by its conduct, as described herein.

35.     The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty, which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

36.     The Plaintiff performed its obligations under the Second Purchase Agreement and the Second Note, and in good faith.

37.     The Defendant, by its conduct described herein, violated the Second Purchase Agreement and the Second Note, breaching its contract with the Plaintiff.

38.     As a direct and proximate cause of the Defendant's breaches of its contract, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IV – BREACHES OF IMPLIED
## COVENANT OF GOOD FAITH-FAIR DEALING

39.     The Plaintiff reasserts Paragraphs 1 through 38 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

40.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

41.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had a binding contract and the Company has no legal basis, as a matter of law, to avoid its obligations under the Second Note or the damages, including but not limited to damages set forth pursuant to Section 3.10 of such Note which arose as a result from the breach of the Second Purchase Agreement and the Second Note.

42.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contract, and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

43.     Under the covenant, the Defendant was obligated to good faith perform of its obligations under the Second Purchase Agreement and the Second Note with the Plaintiff, and to be faithful and consistent to the justified expectations of the Plaintiff.

44.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

45.     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## <u>COUNT V – UNJUST ENRICHMENT</u>

46.     The Plaintiff reasserts Paragraphs 1 through 45 of the Complaint, together with the **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

47.     The Defendant illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

48.     The Defendant's actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

49.     The Defendant has been unjustly enriched by its actions, as described herein.

50.     As a direct and proximate cause of the Defendant's unjust enrichment, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY

51.     The Plaintiff reasserts Paragraphs 1 through 50 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

52.     A fiduciary relationship existed between the Plaintiff and the Defendant, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As a fiduciary, the Defendant was required to maintain and protect the welfare of the Plaintiff.

53.     By engaging in the conduct described herein, the Defendant breached its fiduciary duties to the Plaintiff.

54.     As a direct and proximate cause of the Defendant's breach of fiduciary duty, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VII - FRAUD AND DECEIT

55.     The Plaintiff reasserts Paragraphs 1 through 54 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

56.     The actions of the Defendant described herein constitute fraud and deceit, including but not limited to the following:

> a)      the Defendant made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

> b)      the Defendant made said misrepresentations and omissions for the purpose

of inducing reliance from the Plaintiff; and

c)      the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

57.     As a direct and proximate cause of the Defendant's fraud and deceit, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

58.     The Plaintiff reasserts Paragraphs 1 through 57 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

59.     The conduct of the Defendant as described herein constitutes negligent misrepresentation in that the Defendant negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

60.     As a direct and proximate cause of the Defendant's negligent misrepresentations, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

61.     The Plaintiff reasserts Paragraphs 1 through 60 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

62.     At all relevant times herein, the Defendant conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

63.     The conduct of the Defendant as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

a)      executed the Second Securities Purchase Agreement and the Second Note with full knowledge and understanding of the Defendant's obligations to the Plaintiff, as evidenced by its previous completions of said obligations on the First Transaction Documents;

b)      fraudulently induced the Plaintiff to invest in the Company a second time and thereby breached its promise to repay the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

e)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

64.     As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)    Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)    Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C)    Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D)    Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E)    Order, decide, adjudge, and determine that the liability of the Defendant,  is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)    Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)    Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)       Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive

damages in an amount to be determined;

I)       Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)       Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)       Any additional relief which this Honorable Court deems just and proper.


**THE PLAINTIFF, AUCTUS FUND LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**



Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,



    /s/  *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Sophia E. Kyziridis, Esq. (BBO No. 703590)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com
Email: skyziridis@reedgiordano.com


Dated: August 17, 2019